McDermid et al. v. Cotton.

Reversed and remanded.

## JOHN J. McDERMID, ET AL.
### v.
## T. D. COTTON.

1. PRINCIPAL AND AGENT—EXECUTION OF AUTHORITY.—An agent is bound to pursue the instructions of his principal, and if he deviate therefrom although with a view to his employer's interest, he is answerable for any consequent injury. If loss ensue, it is no defense that he intended to benefit his principal, and if he makes a profit thereby he must account to his principal for the whole, notwithstanding he bore the risk of failure.

2. PRINCIPAL SHOULD DISAFFIRM WITHIN A REASONABLE TIME.—It is no doubt incumbent upon the principal to disaffirm the unauthorized act of his agent within a reasonable time after notice thereof, but what is a reasonable time is a question of fact to be determined from all the circumstances of the case.

3. REASONABLE TIME IN THIS CASE.—In this case, appellants by their telegram of Dec. 6th, led appellee to suppose that their purchase for him had been made according to his instructions, and their letter by mail containing explanations to the contrary did not reach appellee's residence until Dec. 9th. On Dec. 8th, appellee left home on business and did not return until Dec. 16th, when he first received appellant's letter of explanation, and at once notified them of his disaffirmance of their acts. Under the circumstances this was done within a reasonable time.

4. EVIDENCE THAT PURCHASE WAS ADVANTAGEOUS.—On the trial appellants offered evidence tending to show that the purchase made was just as advantageous to appellee as the one ordered. This evidence was properly excluded. It offered no excuse for a departure from the instructions, that the thing substituted was as valuable as the thing ordered.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding.

Mr. CHARLES H. WOOD, for appellants; that if the agents acted within the scope of their authority they are not liable for the loss incurred, cited Whitlock v. Hicks, 75 Ill. 460; Hamilton v. Cook County, 4 Scam. 519.

The plaintiff in law ratified the purchase and is bound by it: Foster v. Rockwell, 104 Mass. 167; Searing v. Butler, 69 Ill. 575; Ward v. Williams, 26 Ill. 447.

The evidence offered by appellants should have been admitted: Wicker v. Hoppock, 6 Wall. 94; Deere v. Lewis, 51 Ill. 254; Allen v. Suydam, 20 Wend. 321; Sedgwick on Damages, 43.

A material amendment of a verdict cannot be made by the court without consent of the jurors or of counsel for the defendant: Bodine v. Swisher, 66 Ill. 536; Frazier v. Laughlin, 1 Gilm. 347; Hinckley v. West, 4 Gilm. 136; Paterson v. United States, 2 Wheat. 221.

Mr. W. T. BURGESS, for appellee; that the objection to amendment of the verdict was not assigned in the motion for a new trial, and therefore waived, cited R. R. I. R. R. Co. v. Steele, 69 Ill. 253.

McDermid et al. v. Cotton.

No exception being taken to the overruling of the motion for a new trial, that motion is not before this court: Miller v. Dobson, 1 Gilm. 572.

Bailey, J. This suit was brought by appellee to recover from appellants $425 in money placed in their hands by him, to be used in payment of margins on grain to be bought on speculation by them for him upon the Chicago Board of Trade. Appellee recovered a judgment in the court below for the full amount of said money and costs, whereupon appellants bring the record here, and allege that the court erred: first, in rejecting and receiving testimony; second, in its instructions to the jury; and third, in overruling appellants motion for a new trial.

Appellants, at the time of the transactions in question, were general commission and grain merchants, doing business in Chicago, on the Board of Trade. Appellee, at the same time, was a resident of the State of Nebraska. Appellee seems to have been acquainted with appellants for a number of years prior to the transactions in question, and to have done business with them by way of consigning to them shipments of grain. On the 30th of October, 1877, appellee being desirous of embarking in a grain speculation through the agency of appellants telegraphed them as follows: " When I think November or December wheat gets as low as I think it is going, I will order some sold. I will send margin." On the 16th of November, following, he remitted to appellants $200, at the same time writing them as follows: " Enclosed find draft for $200. I think I will order some December barley, but to-day it looks to me as though it would go up before long."

On the 1st day of December, appellee remitted to appellants $225 more, and on the same day telegraphed them from Nebraska: " When you think December wheat and corn have touched bottom, buy five of each," meaning five thousand bushels of each. In reply, appellants, on December 3d, wrote appellee acknowledging the receipt of said dispatch, and saying: " Experience of long years has shown us that we cannot safely fill such orders. Our customers are too apt to say I bought it on your judgment, when it goes against them, and

make this an excuse for not paying losses. Order us and we will fill your orders." On the same day this letter was written, appellee wrote a letter to appellants, saying: "I telegraphed you Saturday morning to buy me 5,000 December wheat and corn when you thought it had got down as low as you thought it could. Please use your best judgment to my advantage, and much oblige."

Appellants' letter of December 3d reached appellee December 5th or 6th, and on December 6th appellee telegraphed appellants: "Buy me five December barley." On the same day appellants replied by telegraph: "Bought five barley sixty-three and a half." The next day appellants sent to appellee a letter, by *mail*, in which they wrote: "We neglected to state yesterday that the barley we bought for you was January, and not December. December was, and is, being .freely delivered on this month's sales, and therefore we thought it better and cheaper to buy you January, which cannot be delivered until January comes. The market is easy to-day and dull, the interest being centered principally in wheat and corn. Barley is an article that will either make or lose money fast, and needs good watching. Hoping it will make you some money, we are," etc.

On the 8th of December, appellee not having yet received appellants' letter of December 7th, but supposing from their despatch of December 6th that his order to purchase *December* barley had been complied with, wrote them as follows: "I telegraphed you the 6th to buy me 5,000 bushels December barley; received answer had bo't at 63c. I see it is a little lower yesterday. I have a good deal of faith in December barley. Please watch it close, and if it begins to look too bad let me know."

On the same day on which this letter was written, appellee, without having received appellants' letter of December 7th; left home and went to a place about forty-five miles from where he lived, and did not return until December 16th or 17th. Finding, on his return, appellants' letter of December 7th, and learning therefrom that appellants had bought for him January and not December barley, he wrote them December 17th,

McDermid et al. v. Cotton.

telling them that it was December barley that he ordered bought, and not January barley, and that he would not have anything to do with it as it was not what he ordered. In reply, appellants wrote him a letter dated December 20th, in which they say:

"Your letter of the 17th at hand, and we are surprised at the course you take in regard to the barley. You ordered 5 December barley bought, and we, to serve your interests, and to save you from having to pay for 5,000 cash barley, insurance, and interest, bought January instead, which is just as good for you, saved you expense, and is to-day as salable, or more so, than December. Now that the market has declined a little you plead that you ordered December instead of January, and try to throw the deal on our hands. If you will show us any good reason why January barley is not as good and better for you than December, we will make the difference good, or we will make it the same to you as December was selling at the time your January was purchased, but you cannot repudiate the purchase altogether, and we are surprised that you should attempt such a thing."

To this letter no reply was made. The barley purchased was delivered to appellants January 16th, and the price having declined, they were compelled to sell at a loss, which, together with their commissions, amounted to $425, the precise sum placed in their hands by appellee. The real question presented is whether under the circumstances above detailed appellants or appellee should be compelled to sustain the loss.

It is a plain and unquestionable principle of law that an agent is bound to pursue the orders of his principal and is answerable for any injury consequent on his departing therefrom, however fair may have been his motives for such departure. When his power is limited by instructions he is bound to pursue those instructions and if he deviate therefrom, though with a view to his employer's interest, he will be liable for the consequences. If loss ensues, it furnishes no defense to him that he intended to benefit his principal, and on the other hand, if he thereby obtains an advantage or makes a profit, he will not be allowed to retain it, but must account to his principal

for the whole, notwithstanding he bore the risk of failure.

Here, appellants were limited by their instruction received by telegraph from appellee December 6th, to purchasing barley deliverable to the purchaser in the month of December, and if they acted at all it was their duty to obey that instruction. It left them no discretion. They were not at liberty to substitute something else, although it may in their judgment have been more advantageous to their principal for them to do so. Purchasing barley deliverable to the purchaser in the month of January, was a material departure from their instruction, and they had no power to bind their principal thereby.

It is insisted however, by appellants, that by virtue of previous letters from appellee, they had a discretion to act for him according to their own best judgment, notwithstanding the positive order of December 6th. This claim we think cannot be sustained. Appellee's telegram of December 1st, and also his letter of December 3d, standing by themselves, would undoubtedly have vested such discretion in appellants. Appellants, however, by their letter of December 3d, expressly declined the exercise of any discretion, and called upon appellee for express orders, and in response to that letter appellee gave the order in question. On receiving this order appellant's discretion was gone. They might perhaps have declined to act at all, if to obey the order would in their judgment have been likely to prove disastrous to their principal, but if they made any purchase for him they were bound to make the precise one ordered.

The point is made by appellants that appellee failed to disaffirm their act within a reasonable time after the letter notifying him of what they had done had been sent him. It was doubtless incumbent on appellee to disaffirm the unauthorized act of his agents within a reasonable time after being notified thereof, and upon his failure so to do he would be bound thereby. What was a reasonable time for such disaffirmance was a question of fact, to be determined from all the circumstances of the case. The letter notifying appellee that January barley had been bought was written December 7th, and it is to be presumed reached appellee's place of residence December 9th. On the

McDermid et al. v. Cotton.

8th of December, however, appellee left his home, to be absent for a few days, and returned December 16th or 17th, and then the letter came to his hands and was promptly answered. It is insisted that appellee was in fault in going away from home without leaving behind him some agency for forwarding his correspondence to him in his absence, or at least for having the business with appellants promptly attended to. Whatever may be the rule ordinarily, it will be observed that in this case appellants, by their telegram of December 6th, led appellee to suppose that his order had been literally obeyed, and he had a right to rest on that assumption and act accordingly. He was not obliged to anticipate a correction of the telegram, afterwards transmitted to him tardily through the mail. Had appellants forwarded their correction by the same instantaneous method of communication by which their original report of the purchase was sent, the correction would have reached appellee before his departure from home. We are unable to perceive any unreasonable delay on the part of appellee in sending his disaffirmance and repudiation of the purchase.

Complaint is made that the court below excluded evidence offered by appellants tending to show that the purchase made was just as advantageous to appellee as the one ordered. This evidence was clearly inadmissible upon the principles above laid down. It was the duty of appellants to obey appellee's instruction, and it was no excuse for a departure from the instruction that the thing substituted was as valuable as the thing ordered, or more so. The principal could not be compelled upon such grounds to receive at the hands of his agents an article which he had not authorized them to purchase for him.

We think the instructions given to the jury were entirely in harmony with the law, and subject to no just criticism. We perceive no error in the record, and the judgment is accordingly affirmed.

Judgment affirmed.