Louis Lepman and Frank M. Heggie v. John G. Woods.

1. RATIFICATION—*By Acquiescence.*—Acquiescence, or even silence under conditions making it a duty to speak, may frequently be good ground to hold one dealing with another to the prejudice of the latter, as bound by ratification through implication of law, and as estopping him from denying the contract as against the party prejudiced.

2. DEPOSITIONS—*Objection to, When to Be Specific.*—Objections to depositions must be specific, so as to point out the objectionable matter.

Assumpsit, for goods sold, etc. Trial in the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in the Branch Appellate Court at the March term, 1898. Affirmed. Opinion filed December 23, 1898.

STATEMENT OF FACTS.

This action in assumpsit was brought by appellee to recover from appellants the sum of $251.73, being the alleged value of a certain carload shipment of bananas with freight charges added. A trial was had which resulted in a verdict and judgment for the appellee.

The appellants were partners, engaged in the commission business in Chicago.

One W. P. Moss was a fruit broker, residing and doing business in New Orleans.

The appellee was an importer of fruit at New Orleans.

On January 22, 1897, Moss bought from appellee in New Orleans, for account of appellants, a carload of bananas, which, on the same day, was shipped by rail, consigned to appellant at Chicago.

On the day of the purchase and shipment, appellee telegraphed to appellants as follows:

"NEW ORLEANS, Jan. 22, '97.
LEPMAN & HEGGIE, CHICAGO, ILL.

Shipped you to-day car Limon culls sixteen six sixty-seven bought for your account by your broker, Moss; cost thirty-two half.

JOHN G. WOODS."

And also appellee mailed to appellants on the same day an invoice of the goods, as follows:

                 . " New Orleans, La., Jan. 22, 1897.
Messrs. Lepman & Heggie, Chicago, Ill.
                        To John G. Woods, Dr.
Car No. 16667, bchs. 655 Port Limon bananas at 32½ cents, $212.88; purchased for your account and risk by your broker, W. P. Moss."

Moss, likewise, on the same day, telegraphed appellants as follows:
                                        "1/22/97.
To Lepman & Heggie, Chicago, Ill.
Shipped you I. C. sixteen six sixty-seven Port Limon culls fine; billed by Jno. Woods; can you use more same price? Rush.
                          ·                 W. P. Moss."

A number of other telegrams, subsequent to January 22, 1897, passed between appellants and Moss, in the following order, as follows:

" W. P. Moss & Co., New Orleans.    (Received January 25, 1897.)
Car sixteen six sixty-seven refused.    Offered thirty cents. Weather very cold.    Wire answer.
                              Lepman & Heggie."
                                        "1/25/97.
Lepman & Heggie, Chicago, Ill.
Messengers report receipts fruit O. K.; can not recognize anything else.    Importers look to you full amount invoice.
                              W. P. Moss & Co."
                         '       " Chicago, Jan. 29th, '97.
W. P. Moss & Co., New Orleans.
Shall we dispose of car sixteen six sixty-seven to best advantage?    Railroad company want to know at once, otherwise will be sold for freight charges.
                              Lepman & Heggie."
                     " New Orleans, La., Jan. 30, 1897.
Lepman & Heggie.
We bought the car for your account upon your wire. Have nothing further to say.    You are making a very bad mistake.
                     W. P. Moss & Co., 1:08 p. m."

The only communication that passed directly between appellants and appellee, after the telegram and invoice of January 22, 1897, from appellee to appellants, was the following letter, received by appellee on January 25th, viz.:

"Chicago, Jan. 23, 1897.

John G. Woods, Esq., New Orleans, La.

Dear Sir: We beg to acknowledge receipt of your wire stating that you had shipped car No. 16667 Limon culls bought by Mr. Moss. We intended writing you ere this but now take the opportunity to respectfully inquire whether we could represent you here in the selling of your bananas. The writer has had a great deal of experience in the business; has recently taken charge of the fruit department of this house, and is well acquainted with the whole trade in this city and the city's tributaries for this territory. We handle no fruit ourselves, except in a jobbing way, selling direct to the trade in car lots on a brokerage basis. We know that you recently had two cars of bananas, one car of straights and a mixed car. We could have sold the car of straights at that time for sixty cents, which we were offered, and possibly at sixty-two and one half, but as our man wired us a higher price, we could not obtain it. The mixed car we could also have sold within two and one-half cents of the price we were requested to sell.

Now, whenever you have any cars rolling or any that you wish to offer, we will be pleased to hear from you. We are in a position and have the facilities for selling more bananas than any other party here. Kindly give this matter your consideration and treat this communication confidentially.

We wish to deal, if possible, with the importer direct, and give him the benefit of the prices that we can get.

As to our financial responsibility, we kindly refer you to the National Bank of the Republic, this city, and to all commercial agencies.

Hoping to hear from you soon, we are,

Yours truly,

Lepman & Heggie.

Dictated by W. C. K."

Frank Schoenfeld, attorney for appellants.

Smith, Helmer, Moulton & Price, attorneys for appellee.

Mr. Justice Shepard, after making the foregoing state-ment, delivered the opinion of the court.

The statement of facts comprises, in substance, all the material evidence submitted to the jury.

Briefly epitomized, Moss, without previous authority, bought from appellee, for the account of appellants, a quan-tity of perishable property, which appellee immediately consigned to appellants and notified them of the trans-action. This telegraphic notification, and the invoice that immediately followed, expressly stated the transaction to have been made by Moss as appellants' broker.

Moss also telegraphed appellants at once of the trans-action.

Appellants, on the next day, acknowledged, by letter to appellee, receipt of appellee's telegram, and proceeded to propose further business relations with appellee, without expressing any dissent from, or disaffirmance of, Moss' action.

The obvious and natural inference to be drawn from such circumstances is that appellants acquiesced in and affirmed the act of Moss. Appellee could hardly have drawn any other inference. And the jury had a right to so infer, and we think any fair-minded man would agree that they should so infer.

It must be kept in mind that appellants never, at any time afterward, communicated with appellee upon the sub-ject. As between appellee and appellants alone, the trans-action began and ended with appellee's telegram and invoice of January 22d, and appellant's letter of January 23d. It was only to Moss that appellants ever repudiated the authority that Moss assumed.

The case is not, whether or not there was authorized original agency, but is one of assumed agency, known to the purported principals, and conduct by the latter in adoption or affirmance of the previously unauthorized act of the agent.

We do not consider the law applicable to the case of a mere stranger, or volunteer, without original authority, and no affirmance of his act, as applicable to the case at bar.

Acquiescence, or even silence under conditions making it a duty to speak, may frequently be good ground to hold one dealing with another, to the prejudice of the latter, as bound by ratification through implication of law, and as estopping him so acquiescing or remaining silent from denying the contract as against the party prejudiced.

The circumstances of whether loss and injury to the party acting in good faith might fairly be presumed to follow from a failure to disaffirm the act of an assumed agent, will, we understand, be a material element for consideration in all cases of claimed acquiescense, or ratification by implication.   Under the circumstances of this case there can be no question of lack of positive knowledge by appellants that the effect of leaving a carload of bananas upon a railroad track, in the middle of winter, in a northern climate, would be disastrous.

Illustrative of this doctrine, as applied to varied facts and circumstances, are:   I. & St. L. R. R. Co. v. Morris, 67 Ill. 295;  Hall v. Harper, 17 Ill. 82;  Johnston v. Berry, 3 Ill. App. 256;  Ward v. Williams, 26 Ill. 447;  DeLand v. Dixon Nat. Bank, 111 Ill. 323;  Heyn v. O'Hagen, 60 Mich. 150.

Giving to the verdict every reasonable intendment, we must conclude that the jury found as a fact everything necessary to support the recovery, and it would not be just to disturb their finding on the question of whether or not there was an affirmance by appellants of the act of Moss.

Appellants argue alleged errors by the trial court in overruling their several objections interposed to the depositions of three witnesses on behalf of appellee.   It is sufficient to say that the objections made to the depositions were general and not specific.   The questions put to the several witnesses were proper in form and competent in substance. It is not unlikely that some of the answers were, in part, objectionable, but the objections that were interposed were in no degree specific, and we infer from the record that the trial judge did not have his attention directed to any phase of the subject, except as to whether or not the objections were made in apt time.

The ruling of the court, in the absence of a specific pointing out of the objectionable matter, was not error.

It is also claimed that the trial court improperly excluded a series of letters that passed between appellants and Moss between November 8, 1896, and February 9, 1897. The only ground of error asserted by appellants is that the letters constitute part of the *res gestae*. A careful reading of the correspondence fully justifies the exclusion of the letters. Nothing material or relevant to the issues involved between the parties to this suit is contained in either of the letters.

The general principles already spoken of dispose of all substantial questions concerning the instructions that are complained about, except the one asked by appellee that was modified by the court. The modification was rather in appellants' favor than against them, and affords no ground of complaint by them.

Upon the whole record the case ought to be affirmed, and it is so ordered. Judgment affirmed.